RICHARD HUNT, a lunatic, and SAMUEL H. HUNT, his guardian, *vs.* THOMAS P. HUNT.

An inquisition of lunacy is not conclusive evidence on the question of incapacity.

The evidence in this case *held* to establish the fact, that the grantee was incapable, from mental incapacity, to make the deed in question.

*Held*, also, that the conveyance would have been set aside on the further ground of undue influence exercised by the grantee and his family over the grantor, a man of weak mind, the consideration of the deed also being inadequate.

*McCarter*, for complainant.

*Linn*, for defendant.

THE CHANCELLOR. This bill is filed to set aside a deed made by Richard Hunt, now a lunatic under guardianship, to his brother Thomas P. Hunt, the defendant. The only question before the court is whether, at the time of the execution of the deed, the defendant was so far deprived of his reason as to be incapable of contracting.

The evidence in the case, which is exceedingly voluminous, satisfactorily establishes the following facts: The land in question, in the year 1822, was assigned by commissioners on partition to Richard Hunt, as a part of his father's estate. He was then of full age. In that year he

o*

was taken to the lunatic asylum at Bloomingdale, where he remained under treatment as a lunatic for some months, and was then discharged and returned home in company with his brother, but not restored to his right mind. The answer admits that for seven years after he continued insane, though with lucid intervals. From that time he has virtually been under the charge and care of his brothers; his land has been rented by them without his consent, and at times, as the evidence shows, against his will. He has taken no intelligent interest in or control over it; he has never been assessed or paid taxes for his land, or had the control or management of it; he has been regarded and treated by his own family and by others as of unsound mind; he has never attended an election or voted; he has never been to church or to ordinary places of public resort and assemblage; he has never attended the funeral of a brother or sister or other near relative; he has threatened his mother with personal violence, and has heaped upon her the most opprobrious epithets; he has uttered the most senseless and shocking blasphemies; he has treated female members of his family with indecency and insult; he has, on a great variety of occasions, by his language and his conduct shown that he was laboring under great mental delusion, at other times under extreme mental excitement, without any provoking or adequate cause.

In 1858, a commission of lunacy issued out of this court at the instance of his relatives. An inquisition was taken on the fifth of March, of that year, by which it was found, upon the unanimous concurrence of fifteen jurors, his neighbors and acquaintances, that at the time of taking the inquisition the said Richard Hunt was a lunatic of unsound mind, not capable of the government of himself, his land or lands, and that he had been in the same state of lunacy for the space of thirty years and upwards. That inquisition has not been traversed, and upon its finding Richard Hunt is now under guardianship as a lunatic.

Hunt *v.* Hunt.

The evidence of the inquisition is by no means conclusive of the question of incapacity. *Sergeson* v. *Sealey*, 2 *Atk.* § 412; *Stock on Lunacy* 27; *Whitcknack* v. *Stryker*, 1 *Green's Ch. R.* 6.

But under the circumstances of this case it is entitled to very respectful consideration.

It would be unprofitable to discuss the evidence. I have adverted only to some of its more prominent points, omitting many facts of equal or greater significance. There is nothing, in my judgment, in the evidence on the part of the defendant to overcome or materially to weaken the case made on the part of the complainant. The evidence satisfactorily shows that at the time of the conveyance from Richard Hunt to the defendant he was incompetent, by reason of mental incapacity, to make a binding contract for the conveyance of his land, and on that account the deed should be set aside.

The case is too free from doubt to render the intervention of a jury necessary or expedient. There is another ground which renders a reference to a jury undesirable. If the case upon the ground already stated admitted in my mind of any doubt, I should, nevertheless, feel constrained to set aside this deed upon another ground established by the evidence, *viz.* for the reason that the grantor was of weak mind; that at the time of the conveyance, and for a long time previous, he was a member of the family of the brother to whom the conveyance was made, an inmate of his family, dependent upon him for his daily comforts, to some extent under his control, and in a situation to be influenced and controlled by him; that the evidence shows that undue influences by the grantee or by members of his family were used to operate upon the hopes and fears of the grantor; that the circumstances attending the execution of the contract were such as to justify the belief that it was not understandingly made, and that it was made upon a very inadequate consideration.

'If, therefore, I have entirely misapprehended the force and conclusiveness of the evidence upon the first ground, the complainant would, nevertheless, be entitled to relief in equity against the contract.

The complainant is entitled to relief. But the deed will be set aside upon equitable terms. All the moneys' advanced by the defendant as a consideration for the conveyance must be refunded, and all debts justly due from the grantee to the defendant, which were discharged or released as a part consideration, must be paid, and the obligation entered into by the grantee cancelled and given up. There must be a reference to a master to take an account.